UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| IFTIKAR EL HAYEK WEHBI, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-4227 |
| v. | ) | Judge Marvin E. Aspen |
| | ) | |
| KEVIN RIDDLE, Field Office Director, Chicago Field Office, U.S. Citizenship and Immigration Services; and KENNETH CUCCINELLI, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Iftikar El Hayek Wehbi ("Ms. Wehbi")'s declaratory judgment lawsuit challenges the denial of the visa petition she filed on behalf of her noncitizen husband, Khalil Abbas Wehbi ("Mr. Wehbi"). (Ms. Wehbi's Motion for Summary Judgment ("Plaintiff's MSJ") (Dkt. No. 20); Defendants' Motion for Summary Judgment ("Defendants' MSJ") (Dkt. No. 26).) For the reasons set forth below, we affirm the decision of the United States Citizenship and Immigration Services ("USCIS"). Ms. Wehbi's motion is denied and Defendants' motion is granted. (*Id.*)

**BACKGROUND**

In 1984, Mr. Wehbi entered a sham marriage with Deborah Peoples, a United States citizen. (Certified Administrative Record ("CAR") (Dkt. No. 19-1) at 126.) He then fraudulently used that sham marriage to apply for permanent residency based on marriage. (*Id.* at 154-55.) Mr. Wehbi was then indicted with conspiracy to defraud the United States and for making false

statements under oath. (*Id.* at 128-33.) Mr. Wehbi pleaded guilty in October 1986 to making false statements under oath and was then deported. (Ms. Wehbi's Statement of Material Facts ("Ms. Wehbi's SOF") (Dkt. No. 22) ¶ 16 (citing CAR at 123-24).) He now resides in Lebanon. (*Id.*) Mr. Wehbi and Deborah Peoples divorced in May 1989. (*Id.* at 120-21.)

About four months after his divorce, Mr. Wehbi married Ms. Wehbi, who is a citizen of and resides in the United States. (CAR at 122.) In March 2003, Ms. Wehbi filed her first Form I-130 visa petition on behalf of Mr. Wehbi. (Ms. Wehbi's SOF ¶ 21.) That petition was approved in 2005 and reaffirmed in 2010. (*Id.* ¶ 22-23.) But in September 2012, the USCIS issued a Notice of Intent to Revoke the petition, explaining that "review of [Mr. Wehbi's] entire record, this office independently concludes that the prior marriage was a sham entered into for the sole purpose of circumventing immigration laws." (CAR at 110.) Ms. Wehbi's first Form I-130 petition on behalf of Mr. Wehbi was then revoked on November 14, 2012. (*Id.* at 103.)

Ms. Wehbi filed another Form I-130 petition four years later. (CAR at 20-21.) In that petition, Ms. Wehbi argued that her husband's sham marriage does not bar him from subsequent spousal residency benefits because the sham marriage and his related conviction happened before § 1154(c)'s relevant amendment was enacted. (CAR 8-10.) USCIS denied this petition, explaining that the relevant date for § 1154(c)'s purposes was the date that the Form I-130 petition was filed, not the date that the sham marriage occurred. (CAR at 1-3.) Following USCIS's denial, Ms. Wehbi filed this lawsuit instead of pursuing an administrative appeal with the Board of Immigration Appeals. (CAR at 3.)

## STANDARD OF LAW

Summary judgment is appropriate when evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there are no genuine issues of material fact and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the Administrative Procedure Act, a district court reviews errors of law by the administrative agency de novo. 5 U.S.C. § 706 ("[T]he reviewing court shall decide all relevant questions of law.") Regarding other agency findings, conclusions, and actions, the reviewing court shall hold them unlawful and set them aside if the party seeking judicial review shows that the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise unlawful. *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 689 F. Supp. 2d 891, 895 (W.D. Ky. 2010) (collecting cases). If the plaintiff cannot do so, then the agency's decision stands. *Id.*

## ANALYSIS

Our holding turns on whether USCIS's holding was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. USCIS's holding rejected Ms. Wehbi's Form I-130 visa petition under 8 U.S.C. § 1154(c) (1986) based on Mr. Wehbi's fraudulent 1984 marriage. (CAR at 4.)

For noncitizens to immigrate into the United States or remain in the United States and become a lawful permanent resident, they must generally receive an approved immigrant visa petition. *See, e.g.*, 8 U.S.C. § 1101(a)(15)(A); 8 U.S.C. §§ 1151-54. One way to do so is through a Form I-130 visa petition filed by a United States citizen spouse. *See id.* § 1151(b)(2)(A)(i). USCIS visa petition proceedings place the burden on the petitioner to establish, by a preponderance of the evidence, that the petitioner is eligible and qualified for the benefit sought. 8 U.S.C. §§ 1361, 204.1(f)(1); *see also* 8 C.F.R. § 103.2(b)(8)(iv). On November 10, 1986, Congress amended the law related to Form I-130 petitions. 8 U.S.C. § 1154(c) (1986). The new

3

law required that USCIS deny petitions involving an individual who previously entered a fraudulent marriage to evade immigration laws:

> no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c) (1986). The previous version of § 1154(c) provided that:

> no petition shall be approved if the alien has previously been accorded a nonquota or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c) (1976).

Plaintiff argues that USCIS erred by using Mr. Wehbi's 1984 fraudulent marriage to trigger § 1154(c) (1986) to deny a later filed Form I-130 petition based on a 1989 marriage. Defendants argue that USCIS's decision was sound because § 1154(c) (1986) is triggered by a fraudulent marriage that occurred before November 10, 1986.

The Supreme Court created a test to determine whether a statute should be retroactively applied. *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). In applying that test, courts recognize that there is a "presumption against retroactive legislation." *Id.* at 265. First, a court must determine whether Congress expressly prescribed the statute's proper reach. *Id.* at 280. If the statute does not expressly detail such, then a court must determine whether the statute has a retroactive effect. *Id.*

We first turn to the § 1154(c)'s text, as amended in 1986, to address its proper

application.  With unmistaken clarity, § 1154(c) (1986)'s sham marriage bar expressly applies to petitions filed on or after its November 10, 1986 enactment, even if the fraudulent marriage occurred before 1986.  The statute provides that "no petition shall be approved if [ ] the alien *has previously been* accorded, or *has sought* to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage *determined* by the Attorney General *to have been entered* into for the purpose of evading the immigration laws." 8 U.S.C. 1154(c) (1986) (emphasis added).  Since Mr. Wehbi previously "sought to be accorded" preference status as a spouse of a United States citizen through a marriage that was "determined . . . to have been entered" into fraudulently "for the purpose of evading the immigration laws," Ms. Wehbi's petition on behalf of Mr. Wehbi is barred by § 1154(c) (1986)'s plain language.  Thus, USCIS did not arbitrarily or capriciously apply the law.  Rather, it properly applied § 1154(c) (1986).

This holding accords with congressional intent.  Courts frequently look to "Congress' choice of verb tense to ascertain a statute's temporal reach." *Carr v. United States*, 560 U.S. 438, 448 (2010) (internal citations omitted).  Section 1154(c) (1986)'s language, as amended, uses the past and present-perfect tenses to indicate intended retroactive application.  For example, the amended language includes phrases like "has previously been accorded," "has sought to be accorded," "determined to have been entered into," "has determined," and "has attempted or conspired." 8 U.S.C. 1154(c) (1986).  This verb tense denotes "an action having been completed at some indefinite time in the past," and signifies "imprecision of time." Bryan A. Garner, *Garner's Modern English Usage*, 896-97 (4th Ed. 2016).  Other courts agree with such a reading of similar verb tense. *See, e.g.*, *Barrett v. United States*, 423 U.S. 212, 216 (1976) (observing that Congress used the present-perfect tense to "denot[e] an act that has been completed"); *Dobrova*

5

*v. Holder*, 607 F.3d 297, 301 (2d. Cir. 2010). In *Dobrova*, the Second Circuit ruled that Congress's use of the present perfect tense in the statutory phrasing "has . . . been admitted" referenced a past action that has continuing relevance. *Id.* at 301-02. Likewise, here, § 1154(c) (1986)'s verb tense indicates that post-amendment petitions may be barred by pre-amendment fraudulent marriages, because that pre-amendment conduct has continuing relevance to the post-amendment petitions.

The legislative history also suggests a retroactive intention. It notes how the 1986 amendment "would revise the immigration laws to . . . restrict future immigration privileges if the alien *has previously* been involved in fraud," and that the amendment would "insure that aliens who unsuccessfully *sought* immigration benefits through marriage fraud, may never receive immediate relative or preference status." H.R. Rep. No. 99-906, 99th Cong., 2d Sess. 8, reprinted in 1986 U.S. Code Cong. & Ad. News 5978 at 5980, 5983 (emphasis added).

Limited case law addresses the statute-specific question presented by Ms. Wehbi. *See, e.g.*, *Ramilo v. United States*, 178 F.3d 1300 (9th Cir. 1999); *Ong v. Sessions*, No. 17-cv-6791 (E.D.N.Y. Dec. 21, 2018). In *Ramilo*, a district court applied § 1154(c) (1986) to a petition filed after the amendment's November 10, 1986 enactment, based on marriage fraud that occurred on June 20, 1985. *Ramilo*, 178 F.3d at 1300. The Ninth Circuit affirmed that ruling: "the enacting legislation clearly states that the relevant amendments to § 1154(c) 'shall apply to petitions filed on or after the date of the enactment of this Act'" thus the "focus is thus on the date the petition was filed, not when the fraud occurred." *Id.* In fact, other courts, including the Seventh Circuit, have barred Form I-130 visa petitions under § 1154(c) (1986) based on marriage fraud that occurred before its enactment. *See, e.g.*, *Ghaly v. INS*, 48 F.3d 1426, 1431 (7th Cir. 1993) (revoking a 1992 visa petition in light of a 1985 marriage fraud); *Singh v. Bd. of Immigration*

6

*Appeals*, No. 15-cv-5541, 2017 WL 727541, at *1-2, *8 (S.D.N.Y. Feb. 23, 2017) (citing a 1984 marriage fraud to block a 2004 petition); *Matter of Kahy*, 19 I & N Dec. 803, 803-04 (BIA 1988) (barring a May 1987 petition due to marriage fraud from August 1986).  True, *Ong*, No. 17-cv-6791 (E.D.N.Y. Dec. 21, 2018), held otherwise.  But that nonbinding out-of-circuit and unpublished district court decision warrants little weight because it read § 1154(c) ambiguously, unlike the Ninth Circuit's ruling that the statute was clear in *Ramilo*, unlike the Seventh Circuit's straightforward application in *Ghaly*, and unlike our own reading. *See Ghaly*, 48 F.3d at 1431; *see also Ramilo*, 178 F.3d at 1300; *contra Ong*, No. 17-cv-6791 (Dec. 21, 2018).

Ms. Wehbi also argues that 8 U.S.C. § 1154(c) (1986) should not apply retroactively because Pub. L. 99-639 § 6 says that 8 U.S.C. § 1182 shall apply to "fraud . . . occurring *before*, on, or after such date." Pub. L. 99-639 § 6.  That argument is unpersuasive for several reasons.  First, § 1182's scope is distinguishable.  Section 1182 generally warrants that any "alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182.  Section 1154(c) is different because it more specifically restricts immigration benefits to individuals who engaged in marriage fraud. 8 U.S.C. § 1154(c).  Second, to the extent that Ms. Wehbi asks us to view the lack of identical language between laws as Congress "intentionally and purposefully" preventing § 1154(c) (1986)'s retroactivity, that theory does not explain away Congress's explicit use of the past and present-perfect tenses in § 1154(c) (1986). (Ms. Wehbi's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (Dkt. No. 21) at 7.)  Third, Ms. Wehbi's theory admits § 1182's retroactive effect as to generalized immigration fraud.  That supports a finding of a parallel statutory scheme intended to bar petitions based on more specific

7

immigration fraud like marriage fraud. Fourth, since § 1182 broadly applies to any type of immigration fraud, § 1182 could serve as an independent basis to bar Ms. Wehbi's Form I-130 visa petition. Indeed, Mr. Wehbi pleaded guilty in October 1986 to having made false statements under oath to evade immigration laws in violation of 18 U.S.C. § 1546 ("Fraud and misuse of visas, permits, and other documents"). (Ms. Wehbi's SOF ¶ 16 (citing CAR at 123-24).)

## CONCLUSION

For the foregoing reasons, we affirm the decision of the United States Citizenship and Immigration Services. Ms. Wehbi's motion is denied and Defendants' motion is granted. (Dkt. Nos. 20, 26.)

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: May 3, 2021